UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------- X

STERLING ALEXANDER,

          Plaintiff,   **FIRST AMENDED**
                  **COMPLAINT**

      -against-

THE CITY OF NEW YORK; SGT. GREGORY   12-cv-4115-NG-RER
PERNICONE, SHIELD # 5094'; SGT. DEBBIE
MALDONADO, SHIELD # 900089; P.O. AMIT   ECF Case
DUA, SHIELD # 21474; P.O. ASAD ANWAR,
SHIELD # 18874; P.O. DOMINICK LATORRE,   Jury Trial Demanded
SHIELD # 1991; P.O. JOSEPH D'ALBERTO,
SHIELD # 8592; and P.O. JOHN DOES # 1-10;
the individual defendant(s) sued
individually and in their official
capacities,

          Defendants.

----------------------------------------- X

### PRELIMINARY STATEMENT

    1.  This is a civil rights action in which plaintiff
seeks relief for the violation of plaintiff's rights secured by
42 U.S.C. § 1983; and the First, Fourth, Sixth, and Fourteenth
Amendments to the United States Constitution, and the laws of
the State of New York.  Plaintiff's claims arise from incidents
that arose on or about September 8, 2010 and May 20, 2011.
During the incidents, the City of New York, and members of the
New York City Police Department ("NYPD") subjected plaintiff to,
among other things: unlawful search and seizure; false arrest;
assault and battery; unreasonable force; failure to intervene;

denial of medical care; retaliation; implementation and

continuation of an unlawful municipal policy, practice, and

custom; and respondeat superior liability.  Plaintiff seeks

compensatory and punitive damages, declaratory relief, an award

of costs and attorney's fees, pursuant 42 U.S.C. § 1988, and

such other and further relief as the Court deems just and

proper.

## JURISDICTION & VENUE

2.    This action is brought pursuant to 42 U.S.C. §

1983, and the First, Fourth, Sixth, and Fourteenth Amendments to

the United States Constitution.  Jurisdiction is conferred upon

this Court by the aforesaid statutes and 28 U.S.C. §§ 1331 and

1343.

3.    Plaintiff invokes the supplemental jurisdiction

of this Court pursuant to 28 U.S.C. § 1367 to hear and decide

claims arising under state law. With respect to the May 20,

2011, plaintiff's notice of claim was duly filed on defendant

City of New York within 90 days of the incidents at issue, more

than 30 days have elapsed since such filing and the City of New

York has refused to settle plaintiff's claims.  Moreover, this

action has been filed within one year and 90 days of the

incidents.  Plaintiff has satisfied all conditions precedent for

the filing of this action.

4.    Venue is proper here pursuant to 28 U.S.C. § 1391 because some of the acts in question occurred in Richmond County, and the City of New York is subject to personal jurisdiction in the Eastern District of New York.

## PARTIES

5.    Plaintiff Sterling Alexander is an African American, and resident of the State of New York, Richmond County.

6.    At all times alleged herein, defendant City of New York was a municipal corporation organized under the laws of the State of New York, which violated plaintiff's rights as described herein.

7.    At all times alleged herein, defendants Sgt. Gregory Pernicone, Shield # 5094, Sgt. Debbie Maldonado, Shield # 900089, P.O. Amit Dua, Shield # 21474, P.O. Asad Anwar, Shield # 18874, P.O. Dominick LaTorre, Shield # 1991, P.O. Joseph D'Alberto, Shield # 8592, and P.O. John Does # 1-10 were New York City Police Officers employed with the 120th Precinct, located in Richmond County, New York or other as yet unknown NYPD assignment, who violated plaintiff's rights as described herein.

8.    The individual defendants are sued in their individual and official capacities.

3

## <u>STATEMENT OF FACTS</u>

<u>September 8, 2010</u>

      9.   On September 8, 2010, at and in the vicinity of Harrison Avenue and Maple Street, Staten Island, New York, and the 120th Precinct, Staten Island, New York, several police officers operating from the 120th Precinct, including upon information and belief, defendants Sgt. Gregory Pernicone, Shield # 5094, P.O. Amit Dua, Shield # 21474, P.O. Asad Anwar, Shield # 18874, and P.O. John Does # 1-10, at times acting in concert, and at times acting independently, committed the following illegal acts against the plaintiff.

      10.   On September 8, 2010, at approximately 6:00 a.m., at and in the vicinity of Harrison Avenue and Maple Street, Staten Island, New York, defendants Sgt. Gregory Pernicone, Shield # 5094, P.O. Amit Dua, Shield # 21474, P.O. Asad Anwar, Shield # 18874, and P.O. John Does # 1-10, without either consent, an arrest warrant, a lawful search warrant, probable cause, or reasonable suspicion that plaintiff (or any third person) had committed a crime unlawfully arrested plaintiff.

      11.   Sterling was in his car talking with his brother and his friend when P.O. Amit Dua, Shield # 21474 and P.O. Asad Anwar, Shield # 18874, approached them.

12.   Without cause, P.O. Amit Dua, Shield # 21474 and P.O. Asad Anwar, Shield # 18874 asked Sterling and his brother and his friend what they were doing outside, before accusing them of trying to break into Sterling's own car and demanding that they produce identification.

13.   Sterling's friend asked the officers why any of them had to produce their identification since they had not done anything wrong.

14.   More police officers arrived at the location.

15.   Sterling began to videotape Sgt. Gregory Pernicone, Shield # 5094, P.O. Amit Dua, Shield # 21474, P.O. Asad Anwar, Shield # 18874, and P.O. John Does # 1-10 from his car, using his phone camera.

16.   The defendant officers noticed Sterling recording what was happening with his phone camera.

17.   The defendant officers attacked Sterling, grabbing and pulling him from the car.

18.   The defendant officers forced Sterling onto the hood of a car, pinned him down, struck him in the back, and slammed his head onto the hood while trying to find the phone.

19.   The defendant officers could not locate the phone, and in retaliation struck him and placed extremely tight

handcuffs on him that cut into his wrists and caused his hands
to go numb.

20.    Sterling told the defendant officers that the
handcuffs were too tight, but they ignored him

21.    The defendant officers threw Sterling to a police
car, furthering injuring him, and then transported him to the
120th Precinct where they processed his arrest.

22.    The defendant officers kept Sterling at 120th
Precinct for approximately two days before arraignment in
violation of the requirement that he presented for arraignment
within 24-hours.

23.    Sterling is an asthmatic and experienced an
asthma attack at the 120th Precinct.

24.    Sterling asked for medical attention but the
police refused to provide him with medical care.

25.    Sterling also suffers from panic attacks and
experienced an attack while incarcerated.

26.    Eventually, the police transported him to Central
Booking for arraignment, where he was released on his own
recognizance.

27.    In order to cover up their illegal actions, the
defendant officers, pursuant to a conspiracy, initiated, and
falsely and maliciously told the Richmond County District

6

Attorney's Office that the plaintiff had committed various
crimes.

28.    The defendant officers made these false
allegations, despite the fact that they had no evidence that
plaintiff had committed a crime, to cover up their misconduct,
to retaliate against the plaintiff, to meet productivity goals
and quotas, and to justify overtime expenditures.

29.    Upon information and belief, the unlawful actions
against the plaintiff were also based on profiling.

30.    Thereafter, upon information and belief, the
charges against the plaintiff were resolved with a noncriminal
disposition and the case was sealed.

**May 20, 2011**

31.    On May 20, 2011, at and in the vicinity of 50 Bay
Street, Staten Island, New York, and the 120th Precinct, Staten
Island, New York, several police officers operating from the
120th Precinct, including upon information and belief, defendants
Sgt. Debbie Maldonado, Shield # 900089, P.O. Dominick LaTorre,
Shield # 1991, P.O. Joseph D'Alberto, Shield # 8592, at times
acting in concert, and at times acting independently, committed
the following illegal acts against the plaintiff.

32.    On May 20, 2011, at approximately 11:00 a.m. at
and in the vicinity of 50 Bay Street, Staten Island, New York,

defendants P.O. Dominick LaTorre, Shield # 1991, and P.O. Joseph D'Alberto, Shield # 8592 without either consent, an arrest warrant, a lawful search warrant, probable cause, or reasonable suspicion that plaintiff (or any third person) had committed a crime unlawfully arrested plaintiff.

33.  Sterling was driving his sister's car.

34.  Sterling had dropped off his friend at the Staten Island Ferry.

35.  Defendants P.O. Dominick LaTorre, Shield # 1991, and P.O. Joseph D'Alberto, Shield # 8592 approached and stopped the car without cause.

36.  Sterling had not violated any traffic laws while operating the vehicle.

37.  Once the defendant officers confronted the Sterling, he was not free to disregard the defendant officers' questions, walk away or leave the scene.

38.  The defendant officers demanded to see Sterling's driver's license and the car's registration.

39.  Sterling complied with the illegal order, and the defendant officer reviewed them and saw that they were all in order.

40.    Sterling told the officers that he believed he was being harassed and wanted to know why he had been pulled over.

41.    This angered the defendant officers and they began to harass Sterling, and told him now they were going to search the car.

42.    The defendant officers did not have legal basis to search the car, and Sterling did not consent to a search of the car.

43.    Sterling used his phone to call the NYPD's 911 line to file complaint about the defendant officers.

44.    The defendant officers told Sterling that they would arrest him if he did not hang up.

45.    Sterling continued his call to the 911-operator.

46.    In retaliation, the defendant officers suddenly grabbed and pulled Sterling out of the car.

47.    The defendant officers threw him of the ground and put their knees in his back and placed handcuffs on his wrists.

48.    The defendant officers closed the handcuffs purposely tight causing excruciating pain.

49.    Sterling asked the defendant officers to loosen the handcuffs but they refused.

50.    The defendant officers searched Sterling, but did not find any contraband, controlled substances, or weapons on him.

51.    Plaintiff observed that the defendant officers search his sister's car, and find no controlled substances, contraband, or weapons in the vehicle.

52.    The defendant officers then took Sterling to their car and drove him to the 120th Precinct where they processed his arrest, under the supervision and approval of Sgt. Debbie Maldonado, Shield # 900089, before transporting him to Central Booking for arraignment.

53.    In order to cover up their illegal actions, the defendant officers, pursuant to a conspiracy, initiated, and falsely and maliciously told the Richmond County District Attorney's Office that the plaintiff had committed various crimes, including obstruction of governmental administration and resisting arrest.

54.    The defendant officers made these false allegations, despite the fact that they had no evidence that plaintiff had committed a crime, to cover up their misconduct, to retaliate against the plaintiff, to meet productivity goals and quotas, and to justify overtime expenditures.

55.    Upon information and belief, the unlawful actions against the plaintiff were also based on profiling.

56.    Thereafter, the charges against Sterling were adjourned in contemplation of dismissal on or about May 21, 2011, and the case was dismissed, terminating in his favor.

**General Allegations**

57.    The individual defendants acted in concert committing the above-described illegal acts toward plaintiff.

58.    Plaintiff did not violate any law, regulation, or administrative code; commit any criminal act; or act in a suspicious or unlawful manner prior to or during the above incidents.

58.    At no time prior to, during or after the above incidents were the individual defendants provided with information, or in receipt of a credible or an objectively reasonable complaint from a third person, that plaintiff had violated any law, regulation, or administrative code; committed any criminal act; or acted in a suspicious or unlawful manner prior to or during the above incidents.

59.    The defendants acted under pretense and color of state law and within the scope of their employment.  Said acts by said defendants were beyond the scope of their jurisdiction, without authority or law, and in abuse of their powers, and said

defendants acted willfully, knowingly, and with the specific intent to deprive plaintiff of their rights.

60.    As a direct and proximate result of defendants' actions, plaintiff experienced personal and physical injuries, pain and suffering, fear, an invasion of privacy, psychological pain, emotional distress, mental anguish, embarrassment, humiliation, and financial loss.

61.    Plaintiff is entitled to receive punitive damages from the individual defendants because the individual defendants' actions were motivated by extreme recklessness and indifference to plaintiff's rights.

## FIRST CLAIM

### (UNLAWFUL SEARCH AND SEIZURE UNDER FEDERAL LAW)

62.    Plaintiff repeats and realleges all the foregoing paragraphs as if the same were fully set forth at length herein.

63.    Defendants unlawfully stopped and searched plaintiff without cause, a warrant, or consent.

63.    Accordingly, defendants are liable to plaintiff for unlawful search and seizure under 42 U.S.C. § 1983; and the Fourth and Fifth Amendments to the United States Constitution.

## SECOND CLAIM

### (UNLAWFUL SEARCH AND SEIZURE UNDER STATE LAW)

64.    Plaintiff repeats and realleges all the foregoing paragraphs as if the same were fully set forth at length herein.

65.    Defendants unlawfully stopped and searched plaintiff without cause, a warrant, or consent.

66.    Accordingly, defendants are liable to plaintiff for unlawful search and seizure under New York State law.

## THIRD CLAIM

### (FALSE ARREST UNDER FEDERAL LAW)

67.    Plaintiff repeats and realleges all the foregoing paragraphs as if the same were fully set forth at length herein

68.    Defendants falsely arrested plaintiff without consent, an arrest warrant, a lawful search warrant, probable cause, or reasonable suspicion that plaintiff had committed a crime.

69.    Accordingly, defendants are liable to plaintiff for false arrest under 42 U.S.C. § 1983; and the Fourth Amendment to the United States Constitution.

## FOURTH CLAIM

### (FALSE ARREST UNDER STATE LAW)

70.    Plaintiff repeats and realleges all the foregoing paragraphs as if the same were fully set forth at length herein.

13

71.    Defendants falsely arrested plaintiff without consent, an arrest warrant, a lawful search warrant, probable cause, or reasonable suspicion that plaintiff had committed a crime.

72.    Accordingly, defendants are liable to plaintiff for false arrest under New York State law.

### FIFTH CLAIM

#### (UNREASONABLE FORCE)

73.    Plaintiff repeats and realleges all the foregoing paragraphs as if the same were fully set forth at length herein.

74.    The individual defendants' use of force upon plaintiffs was objectively unreasonable.

75.    The individual defendant officers did not have an objective and/or reasonable basis to use any degree of force against plaintiff, since plaintiff was unarmed, compliant, and did not resist arrest.

76.    Those defendants who did not touch plaintiff, witnessed these acts, but failed to intervene and protect plaintiff from this conduct.

77.    Accordingly, the defendants are liable to plaintiff for using unreasonable and excessive force, pursuant to 42 U.S.C. § 1983; and the Fourth Amendment to the United States Constitution.

### SIXTH CLAIM

**(ASSAULT)**

78.    Plaintiff repeats and realleges all the foregoing paragraphs as if the same were fully set forth at length herein.

79.    Among other things as described above, defendants' search and seizure, battery, false arrest, and excessive use of force against plaintiff placed him in fear of imminent harmful and offensive physical contacts.

80.    Accordingly, defendants are liable to plaintiff under New York State law for assault.

### SEVENTH CLAIM

**(BATTERY)**

81.    Plaintiff repeats and realleges all the foregoing paragraphs as if the same were fully set forth at length herein.

82.    Among other things as described above, defendants' search and seizure, false arrest, and excessive use of force against plaintiff were illegal physical contacts.

83.    Accordingly, defendants are liable to plaintiff under New York State law for battery.

### EIGHTH CLAIM

**(FAILURE TO INTERVENE)**

84.    Plaintiff repeats and realleges all the foregoing paragraphs as if the same were fully set forth at length herein.

85.    Defendants had a reasonable opportunity to prevent the violations of plaintiff's constitutional rights, but they failed to intervene.

86.    Accordingly, the defendants are liable to plaintiff for failing to intervene to prevent the violation of plaintiff's constitutional rights.

## NINTH CLAIM

### (RETALIATION CLAIM)

87.    Plaintiff repeats and realleges all the foregoing paragraphs as if the same were fully set forth at length herein.

88.    Plaintiff exercised free speech during the incident by, among other things, complaining about the individual defendants' unlawful acts and trying to contact 911.

89.    Plaintiff's use of free speech was a motivating factor in the individual defendants' decision to falsely arrest them.

90.    Accordingly, the individual defendants are liable to plaintiff under the First Amendment to the United States Constitution.

## TENTH CLAIM

### (DENIAL OF MEDICAL CARE)

91.    Plaintiff repeats and realleges all the foregoing paragraphs as if the same were fully set forth at length herein.

16

92.   Defendants are liable to plaintiff because they ignored plaintiff's need for medical treatment for a serious medical issue and/or injury, or delayed such treatment, and the harm occasioned by such an act is redressable under the Fourteenth Amendment to the United States Constitution, and 42 U.S.C. § 1983.

## **ELEVENTH CLAIM**

### **(MONELL CLAIM)**

93.   Plaintiff repeats and realleges all the foregoing paragraphs as if the same were fully set forth at length herein.

94.   Defendant City of New York, through a policy, practice and custom, directly caused the constitutional violations suffered by plaintiff.

95.   Defendant City of New York through the NYPD and its officers, committed the following unconstitutional practices, customs and policies against plaintiff: (1) unlawfully stopping and searching innocent persons; (2) wrongfully arresting innocent persons in order to meet productivity goals; (3) wrongfully arresting individuals based on pretexts and profiling; (4) using unreasonable force on individuals; and (5) fabricating evidence against innocent persons.

96.    Upon information and belief, defendant City of New York, at all relevant times, was aware that the defendants were unfit officers who have previously committed the acts alleged herein, have a propensity for unconstitutional conduct, or have been inadequately trained.

97.    Nevertheless, defendant City of New York exercised deliberate indifference by failing to take remedial action.  The City failed to properly train, retrain, supervise, discipline, and monitor the individual defendants and improperly retained and utilized them.  Moreover, upon information and belief, defendant City of New York failed to adequately investigate prior complaints filed against the individual defendants.

98.    Further, defendants City of New York was aware prior to the incident that the individual defendants (in continuation of its illegal custom, practice and/or policy) would stop, arrest and prosecute innocent individuals, based on pretexts and false evidence.

99.    The existence of the aforesaid unconstitutional customs and policies may be inferred from repeated occurrences of similar wrongful conduct involving the individual defendants, placing the defendant City of New York on notice of the

individual defendants' propensity to violate the rights of individuals.

100.  In addition to frequently violating the civil rights of countless residents of New York City, numerous members of the NYPD commit crimes. Officers have been arrested and convicted of such crimes as planting evidence on suspects, falsifying police reports, perjury, corruption, theft, selling narcotics, smuggling firearms, robbery, fixing tickets, driving under the influence of alcohol, vehicular homicide, assault and domestic violence. In fact, former NYPD Commissioner Bernard Kerik was convicted of corruption-related crimes in federal and state court and served time in federal prison. In 2011, Brooklyn South narcotics officer Jerry Bowens was convicted of murder and attempted murder in Supreme Court, Kings County, while under indictment for corruption and is presently serving a life sentence. In 2011, Police Officer William Eiseman and his subordinate Police Officer Michael Carsey were convicted of felonies in Supreme Court, New York County, for lying under oath, filing false information to obtain search warrants and performing illegal searches of vehicles and apartments. In 2012, New York City Police Officer Michael Pena was convicted in Supreme Court, New York County, of raping and sexually

assaulting a woman at gunpoint and is presently serving a sentence of 75 years to life.

101.  Additionally, the existence of the aforesaid unconstitutional customs and polices of profiling minorities, may be inferred from an analysis of the NYPD conducted by the New York Civil Liberties Union ("NYCLU").  The NYCLU's analysis revealed that more than 2 million innocent New Yorkers were subjected to police stops and street interrogations from 2004 through 2011, and that black and Latino communities continue to be the overwhelming target of these tactics.  Nearly nine out of 10 stopped-and-frisked New Yorkers have been completely innocent, according to the NYPD's own reports.

102.  In August 2009, Proffer Levine released a report entitled *The Epidemic of Pot Arrests in New York City*, which stated: Perhaps most appalling is who the police are arresting for marijuana possession.  United States government studies have consistently found that young whites use marijuana at higher rates than do young blacks or Latinos. But the NYPD has long arrested young blacks and Latinos for pot possession at much higher rates than whites. In 2008, blacks were about 26% of New York City's population, but over 54% of the people arrested for pot possession. Latinos were about 27% of New Yorkers, but 33% of the pot arrestees. Whites were over 35% of the City's

population, but less than 10% of the people arrested for possessing marijuana. In 2008, police arrested Latinos for pot possession at four times the rate of whites, and blacks at seven times the rate of whites.

103.    Furthermore, documented civilian complaints about officer misconduct show that African Americans are the most likely targets of abuse, but their complaints are largely ignored.  According to the City of New York's Civil Complaint Review Board's ("CCRB") Status Report, dated December and January 2010, in 2010 African Americans were overrepresented as alleged victims of police misconduct.  Although making up only 23% of New York City's population, they are 58.5% of the alleged victims in CCRB complaints.  On the other hand, whites and Asians were a disproportionately low percentage of alleged victims.

104.    The foregoing customs, policies, usages, practices, procedures and rules of the City of New York and the NYPD were the direct and proximate cause of the constitutional violations suffered by plaintiff as alleged herein.

105.    The foregoing customs, policies, usages, practices, procedures and rules of the City of New York and the NYPD were the moving force behind the constitutional violations suffered by plaintiff as alleged herein.

106.   The City's failure to act resulted in the violation of plaintiff's constitutional rights as described herein.

## TWELFTH CLAIM

### (RESPONDEAT SUPERIOR)

107.   Plaintiff repeats and realleges all the foregoing paragraphs as if the same were fully set forth at length herein.

108.   The individual defendants were acting within the scope of their employment as New York City Police Officers when they committed the above described acts against plaintiff, including falsely arresting, assaulting, and battering plaintiff.

109.   The City of New York is therefore vicariously liable under New York State law for the aforesaid torts.

**WHEREFORE,** plaintiff demands a jury trial and the following relief jointly and severally against the defendants:

a.   Compensatory damages in an amount to be determined by a jury;

b.   Punitive damages in an amount to be determined by a jury;

c.   Costs, interest and attorney's fees, pursuant to 42 U.S.C. § 1988; and

d.   Such other and further relief as this Court may deem just and proper, including injunctive and declaratory relief.

DATED:   Brooklyn, New York
         January 25, 2013

                              MICHAEL O. HUESTON, ESQ.
                              *Attorney for Plaintiff*
                              16 Court Street, Suite 3301
                              Brooklyn, New York 11241
                              (718) 246-2900
                              mhueston@nyc.rr.com
                              By:

                              ____s/_____
                              MICHAEL O. HUESTON